UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| COREY De'ANDRE HOOD, | ) | |
|---|---|---|
| Plaintiff, | ) | Civil No. 7:18-cv-124-GFVT |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| A.W. GARZA, *et al.*, | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Corey De'Andre Hood is a federal inmate who is currently confined at the United States Penitentiary (USP) – Big Sandy located in Inez, Kentucky. Proceeding without counsel, Hood has filed a civil rights action against prison officials pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). [R. 1.] By separate order, the Court has granted Hood's motion to proceed without prepayment of the filing fee. [R. 6.] Thus, the Court must conduct a preliminary review of Hood's complaint pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A. A district court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *McGore v. Wrigglesworth*, 114 F.3d 601, 607–08 (6th Cir. 1997).

I

The Court evaluates Hood's complaint under a more lenient standard because he is not represented by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). At this stage, the Court accepts the plaintiff's factual allegations

as true, and his legal claims are liberally construed in his favor.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).  However, the principles requiring generous construction of *pro se* pleadings are not without limits.  *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *Wilson v. Lexington Fayette Urban County Government*, No. 07-cv-95-KSF, 2007 WL 1136743 (E.D. Ky. April 16, 2007).  A complaint must set forth claims in a clear and concise manner, and must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Hill v. Lappin*, 630 F.3d 468, 470 (6th Cir. 2010).  *See also* Fed. R. Civ. P. 8.  In addition, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  *Twombly*, 550 U.S. at 555.

Moreover, although the Court has an obligation to liberally construe a complaint filed by a person proceeding without counsel, that obligation does not extend so far as to require or permit it to create arguments or claims that the plaintiff has not made.  *Coleman v. Shoney's, Inc.*, 79 F. App'x 155, 157 (6th Cir. 2003) ("Pro se parties must still brief the issues advanced with some effort at developed argumentation.").  Thus, vague allegations that one or more of the defendants acted wrongfully or violated the plaintiff's constitutional rights are not sufficient. *Laster v. Pramstaller*, No. 08-CV-10898, 2008 WL 1901250, at *2 (E.D. Mich. April 25, 2008) ("Neither the Court nor Defendants are obligated to search through the Complaint and its voluminous exhibits in order to glean a clear and succinct statement of each claim for relief.  It is Plaintiffs' responsibility to edit and organize their claims and supporting allegations into a manageable format.").  The Court is not required to create a claim for the plaintiff, nor to "conjure up unpled allegations."  *Moorman v. Herrington*, No. 4:08-CV-P127-M, 2009 WL 2020669, at *1 (W.D. Ky. July 9, 2009)(citations omitted).

The substantive allegations of Hood's complaint are set forth in numbered paragraphs in Section III of the complaint. [R. 1 at 4–7.] Hood first alleges that defendant Lieutenant Moore retaliated against Hood after Hood stated he would be filing a grievance, resulting in Hood's placement in restraints for sixteen hours and otherwise subjecting Hood to allegedly harsh prison conditions. *Id*. at 4. Hood also alleges that defendants Correctional Officer ("C.O.") Howard and C.O. Harshbarger assaulted Hood in his cell, causing physical injury, and that defendant Lieutenant Compton failed to preserve video evidence of the assault on Hood by C.O. Howard and C.O. Harshbarger. *Id*. Hood alleges that, after the assault, Hood was transferred to the "Psychology Department," where Hood was confined to a room and allegedly subjected to harsh prison conditions for four consecutive days. *Id*. at 4–5. Hood claims that, when he told the psychologist (whom he does not identify) that he needed his psychotropic medicine and asked why he was being subjected to such harsh treatment, he was told that it is BOP policy. *Id*. Next, Hood alleges that defendant Nurse Plumley lied about Hood's housing conditions and denied him medical care. *Id*. at 5–6. Hood also alleges that, after Hood refused to sign some papers, defendant Case Manager Webb made derogatory comments about Hood in the presence of other inmates in an effort to "create a hostile environment" for Hood and that Webb threatened to sabotage Hood's disciplinary hearing. He also claims that "A.W.'s" (presumably referring to defendant Acting Warden Garza) have made misleading statements about cold temperatures. *Id*. at 6–7. Finally, Hood alleges that, although he does not believe that he should not have been placed in a maximum security prison and his custody points have been miscalculated, his attempts to show proof of this to Case Manager Webb have been ignored and Webb has refused to transfer him for what Hood believes are personal reasons. *Id*. at 7.

Hood does not identify any particular constitutional right that he claims has been violated. Rather, he broadly alleges that "I feel everything that happened is a violation of my civil rights." *Id*. at 9. He seeks punitive and compensatory damages, transfer to a low-security institution, and evaluation and treatment for his medical and psychological issues. *Id*. at 13.

## II

Hood seeks to pursue his claims pursuant to *Bivens*, which held that an individual may "recover money damages for any injuries...suffered as a result of [federal] agents' violation of" his constitutional rights." *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971). However, to the extent that Hood seeks to sue the defendants in their official capacities, his claims fail. A suit against a government employee in his or her "official capacity" is not a suit against the employee for his or her conduct while performing job duties for the government but is instead a suit against the government agency that employs the individual. Thus, an official capacity suit against an employee of the Bureau of Prisons (BOP) is a suit against the BOP, which is a federal agency. While *Bivens* authorizes suits against federal employees for violations of civil rights, it does not waive the sovereign immunity enjoyed by the United States and its agencies. *Ctr. for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 370 (6th Cir. 2011) (*Bivens* claims may be asserted against federal officials only in their individual capacities); *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003).

Moreover, while *Bivens* expressly validated the availability of a claim for damages against a federal official in his or her individual capacity, an officer is only responsible for his or her own conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 676–77 (2009); *see also Ziglar v. Abbasi*, 137 S.Ct. 1843, 1860 (2017). Thus, in order to recover against a given defendant in a *Bivens* action, the plaintiff "must allege that the defendant [was] personally involved in the alleged deprivation

4

of federal rights." *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (*citing Rizzo v. Goode*, 423 U.S. 362, 373-77 (1976)). Indeed, "[e]ven a pro se prisoner must link his allegations to material facts…and indicate what each defendant did to violate his rights…" *Sampson v. Garrett*, 917 F.3d 880, 882 (6th Cir. 2019) (citing *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010); *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). Thus, to proceed with each of his *Bivens* claims against each defendant, Hood must: 1) allege the violation of a constitutional right; 2) link his allegations to material facts; and 3) indicate what each individual defendant against whom he asserts a particular claim did to violate his constitutional rights.

Although Hood does not identify any particular constitutional rights which he claims to have been violated, construed broadly, his complaint generally appears to suggest violations of the Eighth Amendment. The Eighth Amendment prohibits any punishment which violates civilized standards of decency or "involve[s] the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976) (internal quotation marks and citation omitted). To establish an Eighth Amendment violation, a prisoner must demonstrate that he was deprived of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Wilson v. Seiter*, 501 U.S. 294 (1991) (an Eighth Amendment claim is stated where a prisoner is denied some element of civilized human existence due to deliberate indifference or wantonness); *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996).

An Eighth Amendment claim has both an objective and subjective component: (1) a sufficiently grave deprivation of a basic human need; and (2) a sufficiently culpable state of mind. *Wilson*, 501 U.S. at 298. Thus, to state a viable Eighth Amendment claim, an inmate must allege that a prison official: 1) was actually aware of a substantial risk that the plaintiff

5

would suffer serious harm; and 2) knowingly disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Finally, 42 U.S.C. § 1997e(e) provides, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The United States Court of Appeals for the Sixth Circuit has repeatedly found Eighth Amendment claims for monetary relief precluded by 42 U.S.C. § 1997e(e) absent a showing of physical injury. *See Jennings v. Weberg*, No. 2:06–CV–235, 2007 WL 80875, at *3 (W.D. Mich. Jan.8, 2007) (collecting cases). "[E]ven though the physical injury required by § 1997e(e) for a § 1983 claim need not be significant, it must be more than *de minimis* for an Eighth Amendment claim to go forward." *Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010).

With these standards in mind, the Court has reviewed Hood's claims against Lt. Moore [R. 1 at 4 (¶ 1)] and his claims against C.O.'s Howard and Harshbarger [R. 1 at 4 (¶ 2)]. A response is required from those defendants before Hood's claims against them may be adjudicated further.

However, with respect to Hood's claim that Lt. Compton failed to preserve video evidence of the alleged assault on Hood by Howard and Harshbarger [R. 1 at 4 (¶ 2)], Hood has failed to allege facts to support a claim for which relief may be granted. First, Hood fails to allege any facts suggesting that Lt. Compton acted with *any* particular state of mind, much less a sufficiently culpable one. *Wilson*, 501 U.S. at 298. Nor does Hood allege that Lt. Compton's alleged failure to preserve the video was a grave deprivation of a basic human need and/or that Lt. Compton was actually aware of a substantial risk that Hood would suffer serious harm from the failure to preserve the video. *Farmer*, 511 U.S. at 837. Finally, Hood fails to allege that he

6

suffered from any physical injury as a result of Lt. Compton's actions (or lack thereof), thus his Eighth Amendment claim for monetary relief against Lt. Compton is precluded by 42 U.S.C. § 1997e(e). *Flanory,* 604 F.3d at 254. For each of these reasons, Hood's claim against Lt. Compton will be dismissed.

Next, Hood alleges that, after his assault, he was transferred to the Psychology Department, where he was treated very harshly. [R. 1 at 4–5 (¶ 3).] Specifically, he alleges that he was confined to a room with no toilet or sink, was given an unsterilized contained in which to urinate, was required to be handcuffed and taken to an adjacent cell in order to defecate. *Id*. He also alleges that he had no access to hygiene products, his mattress and blanket were taken at 6:00 a.m. and returned at 10:00 p.m., his food did not match the national menu and consisted mostly of peanut butter sandwiches wrapped in paper towels, the cell in which he was housed was "filthy" and appeared to have bodily fluids on the floor and walls, and he was confined to this cell for four consecutive days without being offered any recreation. *Id*. He further states that, when he asked the psychologist why he was being subjected to such harsh treatment, she said it was BOP policy. *Id*.

However, "[e]xtreme deprivations are required to make out a conditions-of-confinement claim" under the Eighth Amendment. *Hudson v. McMillian,* 503 U.S. 1, 9 (1992). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson,* 832 F.2d 950, 955 (6th Cir. 1987). Indeed, the Eighth Amendment "does not mandate comfortable prisons," but only requires prison officials to provide inmates with "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347, 349. Hood fails to allege facts suggesting that his placement in what appears to be medical segregation in the "Psychology Department," and the

7

resulting minimal intrusion upon the broader freedoms he enjoyed in the general population, deprived him of any of life's necessities sufficient to state a viable claim under the Eighth Amendment. Cf. *Harden-Bey v. Rutter*, 524 F. 3d 789, 795–96 (6th Cir. 2008); *Colgrove v. Williams*, 105 F. App'x 537, 538 (5th Cir. 2004).

Moreover, although Hood identifies Chief Psychologist Le Fever as a defendant, his reference to the "psychologist" in Section III, ¶ 3 of his complaint appears to be the only allegation potentially related to Le Fever. In order to recover against a given defendant in a *Bivens* action, the plaintiff "must allege that the defendant [was] personally involved in the alleged deprivation of federal rights." *Nwaebo*, 83 F. App'x at 86. At most, Hood alleges that this unidentified psychologist inadequately responded to his complaint about the conditions in which he was being held. However, merely responding to a grievance is not a basis to impose liability. *Alder v. Corr. Medical Services*, 73 F. App'x 839, 841 (6th Cir. 2003) ("The denial of the grievance is not the same as the denial of a request to receive medical care."). Thus, Hood's claims alleged in Section III, ¶ 3 regarding the conditions of his confinement in the Psychology Department, including his claim against Chief Psychologist Le Fever, will be dismissed for failure to state a claim.

Turning to Hood's allegations that he was denied medical care, the Court has reviewed Hood's allegations against Nurse Plumley. [R. 1 at 5–6 (¶ 4)] The Court finds that a response is required from Nurse Plumley before Hood's claim against her may proceed further.

Next, Hood alleges that, after Hood refused to sign some papers, defendant Case Manager Webb made derogatory comments about Hood in the presence of other inmates in an effort to "create a hostile environment" for Hood and threatened to sabotage Hood's disciplinary hearing. [R. 1 at 6–7 (¶ 5).] However, it is well-established that verbal abuse or general

harassment by a prison guard does not constitute cruel and unusual punishment in violation of the Eighth Amendment. *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) ("Verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief."); *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding harassment and verbal abuse, while "shameful and utterly unprofessional ... [they] do not constitute the type of infliction of pain that the Eighth Amendment prohibits"); *Ivey*, 832 F.2d at 955. Thus, the alleged verbal comments to Hood cannot form the basis of a valid Eighth Amendment claim. Accordingly, Hood's claim against Case Manager Webb [R. 1 at 6–7 (¶ 5)] will be dismissed.

Although Hood's complaint identifies Acting Warden Garza as a defendant, the only allegation made against him is that Hood spoke to "A.W.'s" about the failure to provide Hood with a coat while Hood was outside in cold temperatures and Hood received "misleading statements," which "illustrates how careless this administration can be." However, to the extent that Hood's claims are based upon allegations of carelessness or negligence by Warden Gaza, claims predicated upon the negligence of federal employees acting within the scope of their employment may only be pursued under the Federal Tort Claims Act, 28 U.S.C. § 2670 *et seq*. (FTCA). Hood neither invokes the FTCA in his complaint nor does he name the United States as a defendant, as is required for an FTCA claim. *Allgeier v. United States*, 909 F.2d 869, 871 (6th Cir. 1990) (the "FTCA clearly provides that the United States is the only proper defendant in a suit alleging negligence by a federal employee.") (citing 28 U.S.C. § 2679(a)). Further, the remedy against the United States provided by the FTCA is exclusive with respect to claims that fall within its scope, and thus a plaintiff may not circumvent its exhaustion or limitations

provisions merely by pursuing a negligence claim under state law directly against the federal employee in his or her individual capacity. 28 U.S.C. § 2679(b)(1).

To the extent that Hood alleges that Warden Garza failed to adequately respond to his complaints regarding prison conditions, *Bivens* liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *Nwaebo*, 100 F. App'x at 369. Nor may Hood proceed in a *Bivens* claim against Warden Gaza based solely on a theory that, as a supervisor, Warden Garza is responsible for the conduct of his employees. Such a form of sweeping supervisory liability is unavailable in a *Bivens* action: "[i]n a § 1983 suit or a *Bivens* action - where masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer." *Iqbal*, 556 U.S. at 677; *see also Ziglar*, 137 S.Ct. at 1860. For all of these reasons, Hood's claim against Warden Garza will also be dismissed for failure to state a claim.

Finally, in Section III, ¶ 7, Hood alleges that his placement in a maximum-security prison was improper and that his custody points were miscalculated. [R. 1 at 7 (¶ 7).] Hood further alleges that, when he tried to show proof of this to Case Manager Webb, she ignored it and instructed a corrections officer to take the papers from Hood. *Id*. He also complains that Webb refuses to transfer him, for reasons that Hood believes to be personal. *Id*. However, to the extent that Hood's claim that his custody points have been miscalculated seeks an earlier or immediate release from physical custody, his only remedy is to seek a writ of habeas corpus; he may not use a civil action to directly or indirectly undermine or impugn the validity of his criminal conviction. A habeas corpus proceeding is the only mechanism available for him to do so. *Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973).

Moreover, "[w]hen a court sentences a federal offender, the BOP has plenary control, subject to statutory constraints, over 'the place of the prisoner's imprisonment,' and the treatment programs (if any) in which he may participate." *Tapia v. United States*, 564 U.S. 319, 331 (2011) (citing 18 U.S.C. §§ 3621(b), (e), (f); 3624(f); 28 C.F.R. pt. 544 (2010)). An inmate has no liberty interest in being placed in any particular penal institution, *Olim v. Wakinekona*, 461 U.S. 238, 247 (1983), or classified at any particular security level, *Hewitt v. Helms*, 459 U.S. 460, 468 (1983), *overruled in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995), and hence no rights protected by the Due Process Clause in that regard. *Sandin*, 515 U.S. at 484–86. *See also Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("... the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.") (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) ("Congress has given federal prison officials full discretion to control [prisoner classification and eligibility for rehabilitative programs in the federal system], 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process."); *Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003). Indeed, the BOP's decisions regarding where to house a particular inmate pursuant to 18 U.S.C. § 3621(b) are expressly insulated from judicial review under the Administrative Procedure Act (APA). 18 U.S.C. § 3625.

For all of these reasons, Hood fails to state a claim against Case Manager Webb related to his prisoner classification and/or the calculation of his custody credits. This claim will be dismissed.

**III**

In summary, after conducting a preliminary review of Hood's complaint pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A, the Court concludes that, with respect to Hood's claims against Lt. Moore (as alleged in Section III, ¶ 1), C.O.'s Howard and Harshbarger (as alleged in Section III, ¶ 2), and Nurse Plumley (as alleged in Section III, ¶ 4), a response is required from those defendants before Hood's claims against them may be adjudicated further. However, the remainder of the claims alleged in Hood's complaint will be dismissed. Because no claims remain pending against Acting Warden Garza, Lt. Compton, Chief Psychologist Le Fever, or Case Manager Webb, those individuals will be dismissed as defendants from this action.

Because Hood in proceeding *in forma pauperis*, the United States Marshals Service (USMS) will serve the summons and complaint on Hood's behalf. Fed. R. Civ. P. 4(c)(3); 28 U.S.C. § 1915(d).

Accordingly, **IT IS ORDERED** that:

1. Hood's claims against Lt. Moore [**R. 1 at 4 (¶ 1)**], C.O.'s Howard and Harshbarger [**R. 1 at 4 (¶ 2)**], and Nurse Plumley [**R. 1 at 5–6 (¶ 4)**] **REMAIN PENDING** and will be served in accordance with the instructions below;

2. The remainder of Hood's complaint [**R. 1**] is **DISMISSED WITHOUT PREJUDICE**;

3. Acting Warden Garza, Lt. Compton, Chief Psychologist Le Fever, and Case Manager Webb are **DISMISSED** as Defendants;

4. The Deputy Clerk shall prepare five (5) "Service Packets" for service upon the United States of America and Defendants Lt. Moore, C.O. Howard, C.O. Harshbarger, and Nurse Plumley. Each Service Packet shall include:

      a.     a completed summons form;

      b.     the complaint [R. 1];

      c.     the Order granting Plaintiff in forma pauperis status [R. 6];

      d.     this Order; and

      e.     a completed USM Form 285;

5. The Deputy Clerk **SHALL DELIVER** the Service Packets to the USMS in Lexington, Kentucky and note the date of delivery in the docket;

6. The USMS **SHALL SERVE** the United States of America by sending a Service Packet by certified or registered mail to the Civil Process Clerk at the Office of the United States Attorney for the Eastern District of Kentucky; and the Office of the Attorney General of the United States in Washington, D.C.;

7. The USMS **SHALL PERSONALLY SERVE** Defendants Lt. Moore, C.O. Howard, C.O. Harshbarger, and Nurse Plumley at USP-Big Sandy in Inez, Kentucky through arrangement with the Federal Bureau of Prisons;

8. Hood **MUST** immediately advise the Clerk's Office of any change in his or her current mailing address. **Failure to do so may result in dismissal of this case**; and

9. If Hood wishes to seek relief from the Court, he must do so by filing a formal motion sent to the Clerk's Office. Every motion Hood files must include a written certification that he has mailed a copy of it to the Defendants or their counsel and state the date of mailing. **The Court will disregard letters sent to the judge's chambers or motions lacking a certificate of service.**

This 1st day of May, 2019.

Gregory F. Van Tatenhove
United States District Judge