UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
at PIKEVILLE

COREY De'ANDRE HOOD,           )
                               )
            Plaintiff,         )          Civil Action No. 18-124-GFVT-CJS
                               )
vs.                            )
                               )
LT. MOORE, et al.,             )          **REPORT AND RECOMMENDATION**
                               )
            Defendants.        )

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Defendants' Motion for Judgment on the Pleadings or, in the alternative, Motion for Summary Judgment.  (R. 62).  Plaintiff Corey De'Andre Hood filed a Response (R. 64), to which the Defendants replied (R. 66).  The motion is ripe for consideration and preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636(b).  For the reasons set forth below, it will be recommended that the Defendants' Motion (R. 62) be **granted.**

I.    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

At the time of the events giving rise to this action, Plaintiff Hood was incarcerated at the United States Penitentiary ("USP") Big Sandy in Inez, Kentucky.  (R. 1 at Page ID 37).  On December 14, 2018, Hood filed a Complaint, *pro se*, alleging a number of claims against eight employees of USP Big Sandy and seeking punitive and compensatory damages, among other remedies.  (*Id.* at Page ID 49).  Hood's claims are *Bivens* claims, which would allow him to recover money damages in a successful suit against federal officials for violations of his civil rights.  *See Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971).  Specifically, Hood named as defendants: Acting Warden Garza, Lt. Moore, C.O. (Correctional

Officer) Howard, C.O. Harshbarger, Lt. Compton, Chief Psychologist Le Fever, Case Manager Webb, and Nurse Plumley.

Following a preliminary review, District Judge Van Tatenhove dismissed Hood's claims against Acting Warden Garza, Lt. Compton, Chief Psychologist Le Fever, and Case Manager Webb for failure to state a claim on which relief could be granted.  (R. 7).  Hood's remaining claims can be summarized as follows: 1) an excessive force claim against Lt. Moore for allegedly placing Hood in restraints for sixteen hours; 2) an excessive force claim against C.O. Howard[1] and C.O. Harshbarger for allegedly physically assaulting Hood; 3) a deliberate indifference claim against Nurse Plumley for allegedly denying Hood medical care; and 4) a deliberate indifference claim against Lt. Moore for allegedly subjecting Hood to inhumane conditions of confinement. (R. 1).  As relief, Hood states: "I want punitive and compensatory damages.  I want to be transferred to a low-security institution.  I want my medical and [psychological] issues to be evaluated and treated appropriately.  I want those listed in this complaint to be held accountable." *(Id.* at Page ID 49).  Since filing his Complaint, Hood has been released from Bureau of Prison custody.  *See* BOP Inmate Locator, https://www.bop.gov/inmateloc/ (last visited August 19, 2021; s*ee also* R. 73).

Following District Judge Van Tatenhove's initial order and opinion, the Defendants then moved to dismiss the complaint, or in the alternative, for summary judgment.  (R. 19).  District Judge Van Tatenhove denied that motion without prejudice to permit the parties to participate in discovery.  (R. 31).  Hood later moved to amend his complaint to add two defendants.  (R. 40). The Court denied that motion.  (R. 68).

---

[1] C.O. Howard has been promoted from Senior Officer Specialist to Lieutenant since the events giving rise to Hood's claims.  (R. 62-1 at Page ID 805).

Discovery was conducted. Hood propounded discovery requests on the remaining Defendants to which the Defendants responded. (*See, e.g.*, R. 38; R. 45; R. 48; R. 55). Hood moved to compel the Defendants to produce three items of discovery: 1) "video footage from the range cameras" showing his alleged assault by C.O. Howard and C.O. Harshbarger; 2) a report prepared by the Office of the Inspector General (OIG); and 3) logs regarding the use of four-point restraints. (R. 39). The Defendants responded by indicating that the video footage does not exist (or at least that they do not possess it), that the OIG report does not exist, and that the logs regarding the use of four-point restraints are irrelevant. (R. 43). The Court: 1) ordered the Defendants to submit a sworn statement certifying whether the video footage exists and is in their possession, custody, or control for purposes of Federal Rule of Civil Procedure 34 and describing their efforts to locate the video footage; 2) denied Hood's request to compel the Defendants to produce the OIG report; and 3) ordered the Defendants to produce the four-point restraint logs. (R. 68). The Defendants reported to the Court that the requested logs were produced and that, after review, while there could have been a surveillance video of the incident at one time, "any such video (if it existed) was most likely automatically overwritten … and lost." (R. 69 at Page ID 1170-71). The Defendants moved to compel the deposition of Hood and to extend discovery. The Defendants later conducted the deposition of Hood after he consented to the deposition. (R. 57). The Court extended the discovery deadline to allow the Defendants time to conduct Hood's deposition. (R. 67).

Following discovery, the Defendants moved for judgment on the pleadings, or in the alternative, for summary judgment. (R. 62). The parties fully briefed that motion. (*See* R. 64; R. 66). This matter has been referred to the undersigned "to conduct all further pretrial proceedings, including overseeing discovery and preparing proposed findings of fact and recommendations on

any future dispositive motions." (R. 31 at Page ID 681). Thus, the Defendants' motion is ripe for review.

The Court will discuss the factual circumstances surrounding each of Hood's claims in more detail below. Each of his claims, however, relates to incidents that occurred in September 2018. Hood alleges that on September 11, 2018, he was transferred to the Special Housing Unit (SHU) pending an investigation. (R. 1 at Page ID 40; *see also* R. 62-3 at Page ID 865-66 (Hood stating there was an investigation into a physical altercation between him and another inmate)). Hood claims that he did not receive a lunch the day that he was transferred and that he informed Lt. Moore he would be filing a grievance for not receiving a lunch, which led Lt. Moore to "fabricate[] a story to run an extraction team into the cell [Hood] was in." (R. 1 at Page ID 40). Hood also claims that Lt. Moore deprived him of various necessities from September 11-14, 2018. (*Id*.) Further, Hood claims that C.O. Howard and C.O. Harshbarger assaulted him in his cell on September 20, 2018. (*Id*.). Finally, Hood claims that Nurse Plumley was deliberately indifferent to his various medical needs during this timeframe and specifically following the incidents with each of the other Defendants. (*See id*. at Page ID 41-42). In their motion, the Defendants seek judgment on the pleadings or summary judgment based on a perceived failure by Hood to exhaust administrative remedies and based on the merits of Hood's claims. The Court will now discuss the factual circumstances of each claim.

### A.    Hood's Excessive Force Claim against Lt. Moore

Hood claims that on September 11, 2018, Lt. Moore fabricated a reason to have an extraction team enter Hood's cell and place Hood in restraints for sixteen consecutive hours. (*Id*. at Page ID 40). The parties disagree as to why Hood was placed in restraints. Hood asserts that Lt. Moore took these actions in retaliation against Hood after Hood informed Lt. Moore that he

4

would be filing a grievance for being deprived of his lunch tray that day. (*Id.* at Page ID 40). The Defendants proffer that the confrontation and ultimate use of force occurred because Hood and his cellmate covered the window of their cell, were exhibiting unruly behavior, and threatened staff, as evidenced by prison records. (*See* R. 62-1 at Page ID 820; R. 19-2 at Page ID 422, 468). Hood denies covering the window, but he does admit to kicking the door of his cell for about ten to fifteen minutes and yelling for attention. (R. 62-3 at Page ID 868).

Hood acknowledges that he sustained no permanent physical injuries as a result of being restrained. (*Id.* at Page ID 875). During the time Hood was in restraints, periodic checks on his welfare were done wherein it was noted that Hood complained of wrist pain during some of the checks, but multiple medical providers noted no visible physical injury upon checks of the restraints. (R. 19-3 at Page ID 530-32, 557-71).

### B.    Hood's Excessive Force Claim Against C.O. Howard and C.O. Harshbarger

Hood's also claims that on the night of September 20, 2018, he was physically assaulted by C.O. Howard and C.O. Harshbarger. (R. 1 at Page ID 40). The record is undisputed that when C.O. Howard attempted to enter Hood's cell in order to add a cellmate, Hood stood at the front of the cell and refused to comply with orders to go to the back of the cell. (*See* R. 62-3 at Page ID 877; R. 19-2 at Page ID 423). Hood claims that C.O. Howard "pushed and tackled" Hood while Hood was in hand restraints, which caused Hood to fall and strike his head, causing injury to his neck and shoulder. (R. 1 at Page ID 40). Hood says he then started screaming "police brutality," prompting C.O. Harshbarger to enter the cell and forcibly place his knee into Hood's spine to the point that he could not breathe. (*Id.*). Hood claims that C.O. Harshbarger ceased this contact when other officers arrived. (*Id.*).

In a memorandum prepared on September 20 describing the incident, C.O. Howard states that when he attempted to add an inmate to Hood's cell, Hood attempted to forcibly exit the cell. (R. 19-2 at Page ID 477). After Hood failed to move to the back of the cell as instructed and demonstrated objection to what the officers intended to do, according to C.O. Howard's report Hood was "placed on the ground with the least amount of force necessary to regain control of inmate Hood." *(Id.).* The Defendants then assert that C.O. Harshbarger entered the cell and assisted with placing Hood in further restraints. (R. 62-1 at Page ID 821). The record shows that it took multiple prison officers to subdue Hood in the face of Hood's continued resistance. (*See* R. 19-2 at Page ID 474-81). Additional prison records documenting restraint checks following the incident state that Hood remained aggressive and actively resistant and that he attempted to assault staff. (*Id*. at Page ID 485-88).

### C.    Hood's Deliberate Indifference Claim Against Nurse Plumley

Hood's third claim is that Nurse Plumley ignored Hood's complaints of pain during her medical assessments of Hood while he was in restraints, overlooked Hood's physical injuries, lied in her reports, and falsified Hood's medical documents. (R. 1 at Page ID 41-2). Specifically, Hood maintains that Nurse Plumley lied in her reports saying that he was housed in a cell that had toilet facilities and that he had access to water. (*Id*. at Page ID 41). Hood claims the hand restraints caused him extreme pain and "were clearly bruising [his] wrists and forearms, but [Nurse Plumley] did nothing to help [him]." (*Id.* at Page ID 42). Hood also complains of other care he received from Nurse Plumley during his time at USP Big Sandy. Specifically, Hood asserts that Nurse Plumley recommended only that he put ice on a finger he was certain was broken and failed to treat his reported inability to breathe, believing it to be caused by allergies. (*Id.* at Page ID 41-2).

6

Further, Hood says that the medical department failed to treat a wrist injury, an injury to a toe, and complaints of hemorrhoids. (*Id.*).

Hood testified that he did not have any injuries resulting from his time in restraints on September 11, 2018. (R. 62-3 at Page ID 875). The facility's records associated with Hood's time in restraints contain no complaint of an actual physical injury to Hood. (R. 19-3 at Page ID 530-32, 557-71). Neither Nurse Plumley nor other staff who completed medical assessments of Hood during that time noted any physical injuries. (*Id.*). The record also shows that Nurse Plumley found no notable injuries during her subsequent medical assessment of Hood on September 20, 2018. (*Id.* at Page ID 551-56).

### D.    Hood's Deliberate Indifference Claim Against Lt. Moore

Finally, Hood alleges that he was deprived of access to "hygiene products, sheets or blankets of any kind, a change of clothing or towels for the next three days" after being placed in restraints on September 11, 2018. (R. 1 at Page ID 40). Hood asserts that his true grievance about the events that began on September 11, 2018, concerns the length of time he was in restraints and the conditions in which he was confined, not the pain inflicted from the use of restraints. (*Id.* at Page ID 40; R. 62-3 at Page ID 872).

## II.    STANDARD OF REVIEW

The Defendants have moved for judgment on the pleadings, or in the alternative, for summary judgment arguing that "Hood's claims are wholly unsupported by any evidence, contradicted by the factual record and speculative." (R. 62-1 at Page ID 806). Under the Federal Rules of Civil Procedure, a party may move for judgment on the pleadings "after the pleadings are closed – but early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is judged by the same standard of review

as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012).  Thus, "[t]o survive a Rule 12(c) motion, 'a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory.'"  *Hindel v. Husted*, 875 F.3d 344, 346–47 (6th Cir. 2017) (quoting *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007)).

When considering a motion for judgment on the pleadings, courts take as true "all well-pleaded material allegations of the pleadings of the opposing party." *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008), quoting *JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 581 (6th Cir. 2007).  Courts may only grant a motion for judgment on the pleadings when "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Id.*  Courts read a *pro se* prisoner's complaint "liberally" and accept as true all non-conclusory allegations in the complaint.  *Davis v. Prison Health Servs.*, 679 F.3d 433, 437 (6th Cir. 2012).

If matters outside the pleadings are presented and not subsequently excluded by the Court, the Court must treat the motion as one for summary judgment. Fed. R. Civ. P. 12(d).  A motion for summary judgment will be granted if the movant shows that "there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56.  Here, because both sides rely on matters outside the pleadings and have had an opportunity to participate in discovery, this Court will treat Defendants' Motion as one for summary judgment.  *See Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 204 (6th Cir. 1998).  Once the moving party has met its burden, the burden shifts to the non moving party to present specific facts showing there is a genuine issue of material fact.  *Arendale v. City of Memphis*, 519 F.3d 587, 593 (6th Cir. 2008) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

8

When ruling on motions for summary judgment, courts accept the non movant's evidence as true and draw all reasonable inferences in favor of the non movant. *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014). Summary judgment will not be granted if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, to survive summary judgment, the non moving party cannot rely on "conjecture or conclusory accusations" but "must be able to show sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Arendale*, 519 F.3d at 605 (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)). Conclusory assertions that are supported only by the asserter's own opinions cannot withstand a motion for summary judgment. *Id.*

## III.    ANALYSIS

Hood does not specifically allege in his Complaint which constitutional rights he believes the Defendants violated. (R. 1 at Page ID 45 ("I feel everything that has happened is a violation of my civil rights")). However, because Hood asserts excessive force and deliberate indifference claims against the Defendants, his claims will be analyzed under the Eighth Amendment. Here, the Court must acknowledge that prisons are not comfortable environments and that conditions are often "restrictive and even harsh." *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Still, if the conditions cannot be said to be cruel and unusual under contemporary standards, they are not unconstitutional and are instead "part of the penalty that criminal offenders pay for their offenses against society." *Id.*

### A.    Failure to Exhaust

The Defendants first argue that summary judgment is required by Hood's failure to exhaust administrative remedies. Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an

action concerning prison conditions must exhaust all administrative remedies that are available
before suing in federal court.  *See* 42 U.S.C § 1997e(a); *Hinton v. Parsons,* 73 F. App'x 872, 874
(6th Cir. 2003).  It is clear that "exhaustion is mandatory under the PLRA and that unexhausted
claims cannot be brought in court."  *Jones v. Bock*, 549 U.S. 199, 211 (2007).  Prisoners must
properly exhaust all administrative remedies by "complet[ing] the administrative review process
in accordance with applicable procedural rules."  *Id*. at 218 (quoting *Woodford v. Ngo*, 548 U.S.
81, 88 (2006)).

While exhaustion is mandatory, a prisoner must exhaust only those administrative remedies
that are available.  *Ross v. Blake*, 136 S. Ct. 1850, 1855 (2016).  Failure to fully exhaust
administrative remedies is excused when administrative remedies are rendered unavailable by the
actions of prison officials.  *Himmelreich v. Fed. Bureau of Prisons*, 766 F.3d 576, 577 (6th Cir.
2014).  Administrative remedies are functionally unavailable "when prison administrators thwart
inmates from taking advantage of a grievance process through machination, misrepresentation, or
intimidation."  *Ross*, 136 S. Ct. at 1860.  To determine whether the actions of a prison official
rendered the administrative remedies unavailable, the Court must determine whether the prison
official's actions "would deter a person of ordinary firmness from continuing with the grievance
process."  *Himmelreich*, 766 F.3d at 577.  This determination is intended only to prohibit
inconsequential actions, so "unless the claimed retaliatory action is truly inconsequential, the
plaintiff's claim should survive a motion for summary judgment."  *Does 8-10 v. Snyder*, 945 F.3d
951, 966–67 (6th Cir. 2019) (quoting *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002)) (internal
quotation marks omitted).

Failure to exhaust is an affirmative defense under the PLRA.  *Jones*, 549 U.S. at 212.
Defendants bear the burden of proving that a plaintiff that is required to exhaust remedies under

the PLRA has not exhausted his remedies. *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012). When a party "also bears the burden of persuasion at trial, the party's initial summary judgment burden is 'higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Id*. at 455-56 (*quoting Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)).

As a federal prisoner, to fully exhaust his administrative remedies, Hood must follow the Federal Bureau of Prison's administrative remedy program. 28 C.F.R. § 542.10 - 542.19. A prisoner must first present the issue for informal resolution, then submit to the Warden an Administrative Remedy Request within twenty days from the date of the event. 28 C.F.R. § 542.14. A prisoner must then appeal the Warden's response to the appropriate Regional Director within twenty days of the date of the Warden's response. 28 C.F.R. § 542.15. If unsatisfied with the decision of the Regional Director, the prisoner must appeal to the General Counsel within thirty days from the date of the Regional Director's response. 28 C.F.R. § 542.15.

Here, Defendants produced records indicating that Hood filed twenty-seven administrative remedies requests while a prisoner, four of which address the claims at issue in this case. (*See* R. 19-2 at Page ID 419-21, 430-47; R. 66-4 at Page ID 1081-95). The record shows that in none of the four that pertain to the claim at issue did Hood correctly follow the required process or exhaust all appeals. (R. 19-1 at Page ID 397; R. 19-2 at Page ID 431, 433, 435). Although the record indicates that Hood did fail to exhaust administrative remedies, he is required to exhaust only those remedies that are available and the "improper actions of prison officials render the administrative remedies functionally unavailable." *See Himmelreich*, 766 F.3d at 577.

11

Defendants state that Hood provides only a "thin, conclusory assertion" that staff placed him in a Special Housing Unit (SHU) to prevent him from exhausting administrative remedies. (R. 62 at Page ID 811). However, it is Defendants who bear the burden of proof on exhaustion. *See Surles,* 678 F.3d at 456. Hood's affidavit alleges specific facts that he was retaliated against for threatening to file a grievance and alleges that he was placed in restraints for sixteen hours in retaliation for filing his initial grievance. (R. 65 at Page ID 915). If Hood's allegations are true, a reasonable jury could find that a person of ordinary firmness would be deterred from continuing through the administrative remedy process. *See Himmelreich*, 766 F.3d at 578 (finding that prisoner's specific allegations of threats of transfer to a prison where he would be attacked and placement in the SHU for filing a lawsuit created a fact issue that precluded summary judgment).

Defendants also base their argument that the administrative remedy process was not rendered functionally unavailable on the fact that Hood testified that he requested grievance forms while in the SHU, and that Hood had access and was able to file grievance forms at all levels of the process during his time at USP Big Sandy, as shown by the administrative record. (*See* R. 19-2 at Page ID 419-21, 430-47; R. 66-4 at Page ID 1081-95). The fact that Hood was able to file for other administrative remedies does not show that he was not prevented from filing the particular forms needed as to the claims at issue. *See Surles*, 678 F.3d at 457-58 (finding that the inference the prisoner was able to file on a more than regular basis does not adequately show that his ability was not interfered with on particular occasions or as to particular claims).

Defendants must establish the absence of a genuine dispute as to any material fact regarding the issue of exhaustion. Defendants have not presented evidence that would preclude a reasonable jury from finding that Hood's ability to exhaust administrative remedies was not rendered functionally unavailable. Accordingly, a material issue of fact remains as to whether the

grievance process was rendered functionally unavailable to excuse Hood from the exhaustion requirement.

While summary judgment is not appropriate on the issue of exhaustion, Hood must still meet his burden on the merits for each of his claims to survive summary judgment. A plaintiff asserting a *Bivens* claim "must offer evidence to support an individual defendant's personal involvement in the deprivation of a constitutional right." *Burley v. Gagacki*, 729 F.3d 610, 618 (6th Cir. 2013) (citing *Mueller v. Gallina*, 137 F. App'x 847, 850 (6th Cir. 2005); *Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997)). As will be explained below, Hood fails to meet his burden to demonstrate his claim of a constitutional violation, and therefore summary judgment on the merits of each claim will be recommended.

### B.      Hood's Excessive Force Claims

Turning to the substance of Hood's claims, he first asserts excessive force claims against Lt. Moore, C.O. Howard, and C.O. Harshbarger. The Eighth Amendment prohibits prison officials from using excessive force against imprisoned people. *See, e.g.*, *Wilkins v. Gaddy*, 559 U.S. 34, 37-40 (2010); *Hudson v. McMillian*, 503 U.S. 1, 4-9 (1992); *Whitley v. Albers*, 475 U.S. 312, 318-22 (1986). An Eighth Amendment claim alleging excessive force by prison officials has both an objective and subjective component. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014). It must be determined "both if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson*, 503 U.S. at 8 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 303 (1991)).

Objectively, the pain inflicted by the prison official must be "sufficiently serious" to offend "contemporary standards of decency." *Williams v. Curtin*, 631 F.3d 830, 383 (6th Cir. 2011). Although the extent of an inmate's injury is one factor to be considered in whether force could

have been thought necessary, it is "whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically to cause harm" that determines whether the use of force amounted to a violation of the Eighth Amendment. *Wilkins*, 559 U.S. at 37.

The subjective component instead looks to the state of mind of the prison official in whether the conduct was wanton. *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993). To evaluate the prison official's state of mind, a district court must consider the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officers, and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 7 (citation omitted). "Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain…the case should not go to the jury." *Whitley*, 475 U.S. at 322.

### 1.     Hood's Excessive Force Claim Against Lt. Moore

Hood's first claim is that Lt. Moore fabricated a story in order to place him in restraints for sixteen consecutive hours beginning on September 11, 2018. (R. 1 at Page ID 40). Hood asserts that he had no access to "hygiene products, sheets or blankets of any kind, a change of clothing or towels for the next three days", that he had only a worn-out mattress, and that it was very cold. (*Id.*).

In considering the objective prong, although a lack of physical injury will not prevent the success of an excessive force claim under the Eighth Amendment, the extent of the injury must be "more than *de minimis* for an Eighth Amendment claim to go forward." *Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010). As discussed above, the record is undisputed that soft restraints were used, and that Hood admits he sustained no injuries from the use of those restraints. (*See* R. 62-3 Page ID 875; R. 19-2 at Page ID 460-463). The record indicates that, although Hood

14

complained of wrist pain during some checks, no injuries were noted by multiple medical providers conducting restraint reviews. (R. 19-3 at Page ID 530-32, 557-71). Hood's lack of injury from the restraints further supports the proposition that the use of force was done in good faith. Accordingly, Hood's claim against Lt. Moore fails under the objective component of the excessive use of force analysis. No reasonable jury could conclude that Lt. Moore's application of soft ambulatory restraints inflicted pain sufficiently "serious to offend contemporary standards of decency." *See Cordell*, 759 F.3d at 585.

In next considering the subjective prong, when evaluating an action taken in the judgment of a prison official, the prison official should be given "wide ranging deference in the adoption and execution of policies . . . needed to preserve internal order and discipline and to maintain institutional security." *Whitley*, 475 U.S. at 321-22. It must be shown that "there was no plausible basis for their belief that this degree of force was necessary." *Id.* at 323.

Hood admits that, prior to being placed in restraints, he had been kicking his cell door and yelling for attention for ten to fifteen minutes. (R. 62-3 at Page ID 868). Prison records indicate that Hood and his cellmate were also threatening staff when they were approached. (R. 19-2 at Page ID 468). Prison records also indicate that Hood continued to be aggressive throughout his time in restraints, using profane language towards staff. (*See, e.g., id.* at Page ID 457 (when asked if he was ready to comply with staff, Hood replied "No! Get me a BP-11 you bitch ass N motherfuckers"); R. 19-2 at Page ID 458 (Hood said, "This is bullshit, when I get a chance, I am going to fuck that other Lieutenant up.")). Based on these facts, a use of force was needed to control Hood's behavior, and Lt. Moore had a plausible basis to reasonably believe that Hood's behavior, if left uncontrolled, could lead to injury to prisoners or staff. The record, therefore, does not support "a reliable inference of wantonness in the infliction of pain" as is required for an Eighth

15

Amendment claim made relating to a prison official's use of force in deploying a prison security measure. *Whitley*, 475 U.S. at 322.

The record also demonstrates that an appropriate amount of force was used by Lt. Moore to control Hood. The record is undisputed that soft hand restraints were used as opposed to hard restraints to control Hood until he calmed down. (*See* R. 62-3 at Page ID 873; R. 19-2 at Page ID 422). Periodic restraint checks were conducted after Hood was placed in restraints, and the Defendants provided records that, once Hood's disruptive behavior ceased, he was released from restraints. (R. 19-2 at Page ID 457-66). The use of soft restraints and the length of Hood's time in the restraints was not excessive considering the perceived need by prison officials to use force as discussed above.

To the extent that Hood argues that Lt. Moore placed him in restraints for an excessive amount of time, his arguments fail as a matter of law. "Although the improper use of restraints may violate the Eighth Amendment, physical restraints are constitutionally permissible where there is penological justification for their use." *Kennedy v. Doyle*, 37 F. App'x 755, 757 (6th Cir. 2002) (internal citations omitted). Here, the record demonstrates that a reasonable amount of force was used by Lt. Moore to control Hood. On these facts, no reasonable jury could find that the use of soft restraints and the length of Hood's time in the restraints was excessive in light of the perceived need by prison officials to use force as discussed above. *See Kennedy*, 37 F. App'x at 757;[2] *see also Anthony v. Gilman*, No. 4:03-CV-87, 2006 WL 222842, at *4 (W.D. Mich. Jan. 26,

---

[2] In *Kennedy*, the Sixth Circuit found summary judgment for prison officials was proper on the plaintiff's Eighth Amendment claim when: "The record reveal[ed] that Kennedy was placed in restraints only after he broke his prison cell window. The restraints were designed to control Kennedy's behavior. More restrictive restraints were placed on Kennedy after he continued to be involved in breaking one window while in restraints and attempting to break another window. Moreover, even after Kennedy was released from restraints, he broke another window, which justified the defendants' action in again placing Kennedy in restraints. The defendants complied with Policy Directive 04.05.112, which established restraint procedures for handling disruptive prisoners." *Kennedy*, 37 F. App'x at 757.

2006) ("However, the use of [top of bed] restraints does not necessarily amount to the unnecessary and wanton infliction of pain . . .  This is particularly true where the restraints are justified by a security concern.").

Further, the record demonstrates that prison officials made efforts to temper the severity of the use of force in response to Hood's behavior beyond the choice to use soft restraints. Confrontational avoidance procedures were also implemented in hopes to dissipate the need for further force.  (R. 19-2 at Page ID 422).  In sum, the record makes clear that Lt. Moore's actions were not malicious and sadistic, but rather made in good faith in response to a reasonably perceived threat of unrest.

Review of the record in this case reveals that there was a need for the use of force, that the force used was reasonable in regard to that need, that the decision to use force was reasonably perceived by Lt. Moore, and that efforts were made to temper the amount of force used.  As such, Hood's claim against Lt. Moore also fails the subjective component of the use of force analysis. Accordingly, because Hood's claim against Lt. Moore fails both the objective and subjective components of the use of force analysis, it will be recommended that summary judgment be granted to Lt. Moore on Hood's excessive force claim against him.

### 2.    Hood's Excessive Force Claim against C.O. Howard and C.O. Harshbarger

Hood next claims that on the night of September 20, 2018, he was physically assaulted by C.O. Howard and C.O. Harshbarger.  (R. 1 at Page ID 40).  Although Hood claims that the restraints used following the altercation caused him "excruciating" pain, the record shows that he received continued restraint checks in which no injuries were noted.  (*Id.* at Page ID 42; R. 19-2 at Page ID 482-488).  Hood stated that the pain from the handcuffs lasted for less than a day and the swelling lasted for two days.  (R. 64 at Page ID 908-09).

17

To satisfy the objective component, Hood must show that the pain he experienced was "sufficiently serious." *See Williams,* 631 F.3d at 383. And although Hood states that this altercation also exacerbated a previous shoulder injury, he asserts that this injury went away after self-prescribed rehabilitation exercises. (R. 62-3 at Page ID 885). These facts, when making all justifiable inferences in Hood's favor, fail to show an injury sufficiently "serious to offend contemporary standards of decency." *See Cordell*, 759 F.3d at 585. Hood has claimed no lasting injury and the record does not support claims of more than a *de minimus* injury when making all possible inferences in Hood's favor.

In analyzing the subjective prong, Hood's allegations do not show that C.O. Howard and C.O. Harshbarger had the culpable state of mind needed for an excessive force claim under the Eighth Amendment to proceed. Hood admits that when he was told to move to the back of the cell he did not comply. (R. 62-3 at Page ID 877). Moreover, Hood further does not dispute that while handcuffed, he refused to move from the door. (*Id.* at Page ID 876). C.O. Howard described the incident as Hood "attempt[ing] to exit the cell in an aggressive manner almost striking me with his shoulder" after he opened the cell door to escort another inmate into Hood's cell. (R. 19-2 at Page ID 477). When regaining control of an aggressive inmate, prison officials may use an appropriate amount of force. *Cordell*, 759 F.3d at 581. Given that Hood was admittedly non-compliant and aggressive, C.O. Howard could use an appropriate amount of force against him.

When questioning whether use of force was justified, "[t]he issue is ... not whether the use of force was absolutely necessary in hindsight, but whether the use of force could plausibly have been thought necessary...." *Id.* (quoting *Griffin v. Hardrick*, 604 F.3d 949, 954 (6th Cir. 2010)). Because Hood was continuing to resist following the application of arm restraints, C.O. Howard reasonably could have believed that some amount of force was needed to move Hood to the back

18

of the cell following his refusals to do so.  As discussed above, "wide ranging deference" is to be given to a considered choice made by a prison official in how to respond to an incident that threatens the safety and security of inmates and staff.  *See Whitley*, 475 U.S. at 321.

The evidence also does not support a reliable inference of wantonness. Given Hood's admittedly aggressive behavior, C.O. Howard and C.O. Harshbarger had a plausible basis for the belief that the use of force was necessary.  Although Hood alleges that C.O. Harshbarger placed his weight on Hood for no apparent reason, Defendants assert that C.O. Harshbarger came into the cell to assist with placing more restraints on Hood following Hood's lack of compliance.  (R. 62-1 at Page ID 821).  Defendants produced reports of several prison officials witnessing the encounter that detail Hood's continued resistance following C.O. Howard's attempt to place another inmate in Hood's cell.  (R. 19-2 at Page ID 474-81).  Further, prison records documenting restraint checks following the incident state that Hood remained aggressive and actively resistant and attempted to assault staff.  (*Id.* at Page ID 485-88; s*ee, e.g., id.* at Page ID 487 (Hood stating, "I am going to fuck you up" then stating at a later check that he was going to "hurt somebody")).  Given this evidence, it cannot be reasonably inferred that C.O. Harshbarger, witnessing Hood's continued resistance, had no plausible basis to believe that some application of force was necessary to regain control of the situation and further restrain Hood.

The fact that the use of force may have been justified by a perceived need does not mean that the relationship between the need and amount of force used did not violate the Eighth Amendment.  *Cordell*, 759 F.3d at 582.  However, "not every push or shove, even if it appears to be unnecessary, violates a prisoner's constitutional rights."  *Hampton v. Alexander*, 76 F.3d 378, at *1 (6th Cir. 1996) (unpublished table decision).  The prison official must have a reasonable basis for using the amount of force that he used.  *Cordell*, 759 F.3d at 582.

Courts have found that summary judgment is not appropriate given facts indicating the amount of force used in relation to the threat of a handcuffed inmate was not reasonable. *See, e.g., Cordell,* 759 F3d at 582 (summary judgment not appropriate when prisoner alleged that officer used handcuffed prisoner as a "human battering ram" by slamming him headfirst into a wall); *Baldwin v. Hutson*, No. 6:19-CV-151-REW, 2020 WL 3530563, at *5 (E.D. Ky. June 30, 2020) (summary judgment not appropriate when prisoner alleged that officer slammed handcuffed prisoner to the ground and repeatedly banged prisoner's head into the floor). Hood's claims, however, do not allege circumstances that would support a reasonable jury inferring that C.O. Howard and C.O. Harshbarger did not have a reasonable basis for using the amount of force they did given Hood's continued aggressive behavior.

Hood states that C.O. Howard pushed him to the back of the cell after he refused to voluntarily move to the back of the cell, causing him to fall and hit his head and shoulder. (R. 1 at Page ID 40). Though he was in hand restraints at this time, Hood acknowledges that C.O. Howard told him to move to the back of the cell and that he refused to comply. (R. 62-3 at Page ID 877). And although Hood claims that he was lying on his stomach "non-resistant and screaming police brutality," the record shows that multiple prison officials were necessary to gain control of Hood and that, after the incident, he remained aggressive even though he was in hand restraints. (R. 19-2 at Page ID 423-24, 473-81). Thus, accepting Hood's version of these facts as true, the force used by C.O. Howard and C.O. Harshbarger was not excessive in considering the surrounding circumstances.

The record also indicates that efforts were made to temper the severity of the force used. Hood, for example, states that C.O. Howard attempted to catch him as he fell. (R. 62-3 at Page ID 877). In explaining the length of time that C.O. Harshbarger restrained him, Hood asserted that

C.O. Harshbarger had his knee on Hood's neck for "probably like 30 seconds, maybe a minute" and that when other officers entered the cell to assist, C.O. Harshbarger removed his weight from Hood. (*Id.*). The short duration that C.O. Harshbarger used force against Hood in the face of Hood's aggressive behavior, and the fact that C.O. Harshbarger ceased his use of force when help arrived indicate that the officers made efforts to temper the severity of force used against Hood.

Although lack of injury is not dispositive, it is indicative of the amount of force applied or that the force used was necessary and appropriate. *Wilkins,* 559 U.S. at 37. The record indicates that no injuries were noted following the encounter. (R. 19-3 Page ID 532-33, 551-56). When viewed with the surrounding circumstances of the encounter, the nature of Hood's injury suggests that C.O. Howard and C.O. Harshbarger did not use an amount of force that wantonly inflicted upon Hood an injury sufficiently serious to amount to cruel and unusual punishment. Hood has not produced evidence that would allow a reasonable jury to find that either use of force was disproportionate to Hood's admitted resistance.

In sum, against C.O. Howard and C.O. Harshbarger, Hood's claims fail to satisfy the objective and subjective prongs of the Eighth Amendment analysis. Accordingly, it will be reccomended that summary judgment be granted on Hood's claims against these Defendants.

###    C.    Hood's Deliberate Indifference Claims

The Eighth Amendment's prohibition against cruel and unusual punishment requires the government to provide medical care for inmates. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Deliberate indifference to a prisoner's serious medical needs is therefore a violation of the Eighth Amendment. *Id* at 104. Like an excessive use of force claim, a deliberate indifference claim arising from the deprivation of medical care consists of both an objective and subjective component. *Id.* The objective component requires a plaintiff to demonstrate the existence of a

21

"sufficiently serious" medical need. *See id*. "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2013) (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004) (internal quotation marks omitted)). By contrast, "to satisfy the subjective component, the prisoner must allege facts which show that the prison official had a 'sufficiently culpable state of mind.'" *Scott*, 577 F.3d at 648 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "It must be shown that the official acted with reckless disregard for a substantial risk to the prisoner, that he drew the inference, and that he disregarded the risk." *Id.*

The deliberate indifference standard also applies to claims that prison conditions are inhumane in violation of the Eighth Amendment. *Wilson*, 501 U.S. at 303. "Extreme deprivations," rather than "routine discomfort," are required to satisfy the objective component of a deliberate indifference claim. *Hudson*, 503 U.S. at 8-9. "Only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* (quoting *Wilson*, 501 U.S. at 298) (internal quotations omitted). Conditions that are "restrictive and even harsh" are not cruel and unusual but rather "are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347. In addition to showing that conditions were sufficiently extreme, a prisoner must also show that the prison official acted with the sufficiently culpable state of mind. *Hudson*, 503 U.S. at 9. Conditions imposed on a prisoner "must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment*."* *Rhodes*, 452 U.S. at 347.

1.    **Hood's Deliberate Indifference Claim Against Nurse Plumley**

Hood's third claim is that Nurse Plumley was deliberately indifferent to his serious medical needs. Hood alleges that Nurse Plumley ignored Hood's complaints of pain during her medical assessments of Hood, overlooked Hood's physical injuries, and lied in her reports. (R. 1 at Page ID 41-42).

Claims against Nurse Plumley arising after the September 11, 2018 incident will be addressed first. Defendants argue that Hood denied injuries in the initial assessment completed by Nurse Plumley and no injuries were identified by Nurse Plumley or other staff related to the events at issue. (R. 19-3 at Page ID 531-32, 561-71; *see, e.g., id.* at Page ID 564 ("no injuries noted by previous RN and no injuries noted at this time")). Hood testified that he suffered no pain from his time in restraints arising from the events on September 11. (R. 62-3 at Page ID 875). Thus, Hood's allegations against Nurse Plumley regarding the care Hood received on September 11 show no sufficiently serious medical need. As Hood had no injuries, no reasonable jury could find that Hood had a medical need "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *See Harrison*, 539 F.3d at 518 (quoting *Blackmore*, 390 F.3d at 897) (internal quotation marks omitted).[3]

In next addressing Hood's claim that Nurse Plumley was deliberately indifferent during her medical assessment of Hood following the September 20, 2018 incident, Hood asserts that Nurse Plumley ignored his complaints that the handcuffs were too tight and that she completed a "bogus" medical assessment by stating that the restraints were applied properly. (R. 62-3 at Page ID 879, 881). Hood claims that Nurse Plumley knew the restraints were too tight because the

---

[3] Hood also alleges that C.O. Howard, C.O. Harshbarger, and Nurse Plumley laughed at his complaints of pain, that Nurse Plumley told him to "shut up" during a medical assessment, and that Lt. Moore "blew kisses at [him] and smiled sadistically." (R. 65 at Page ID 915-16; R. 64 at Page ID 907-08). These allegations do not rise to a constitutional violation. *See Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that "harassment and verbal abuse . . . do not constitute the type of infliction of pain that the Eighth Amendment prohibits.").

handcuffs made his hands "swell like balloons." (R. 62-3 at Page ID 881). However, the record shows that Nurse Plumley found no notable injuries during her medical assessment of Hood on September 20. (R. 19-3 at Page ID 551-56). Although Hood claims that the restraints used following the altercation caused him "excruciating" pain, the record shows that he received continued restraint checks in which no injuries were noted. (R. 1 at Page ID 42; R. 19-2 at Page ID 482-88). Hood also stated that the pain from the handcuffs lasted for less than a day and the swelling lasted two days. (R. 64 at Page ID 908-09). Hood thus has failed to provide sufficient evidence that his injuries, if any, amounted to a serious medical need. *See, e.g., Lockett v. Suardini*, 526 F.3d 866, 877 (6th Cir. 2008) (finding prisoner's minor cuts and lacerations and soreness in fingers were not sufficiently serious to mandate treatment).

The record also does not demonstrate that Nurse Plumley was deliberately indifferent to Hood's medical needs. Hood does not allege that he was refused medical treatment completely, but rather that he was given inadequate treatment. Hood received continued restraint checks and medical care throughout his time in restraints. (R. 19-2 at Page ID 457-66, 482-88). The record indicates that Nurse Plumley checked Hood's heart, lungs, and pulse and noted no signs of injury following the September 11 incident. (*Id.* at Page ID 460-61). The record also indicates that Nurse Plumley checked Hood's heart, lungs, pulse, and blood pressure and noted no signs of injury following the September 20 incident. (*Id.* at Page ID 483). To show that Nurse Plumley was deliberately indifferent, Hood must provide evidence of more than ordinary negligence. *See Farmer*, 511 U.S. at 860. Hood thus cannot satisfy the subjective component that Nurse Plumley was deliberately indifferent to his medical needs. *See, e.g., Lucas v. Warden Lewisburg USP*, 573 F. App'x 205, 208 (3d Cir. 2014) (prisoner with mild wrist injury who received ongoing medical care and restraint checks could not survive summary judgment on deliberate indifference claim).

24

Hood also claims that Nurse Plumley refused to treat his shoulder injury. He testified that, although he did not tell Nurse Plumley of his shoulder injury, he had a scar from the injury that he believes she overlooked in her assessment. (R. 62-3 at Page ID 880). Hood also testified to his belief that she prevented him from receiving treatment from a specialist for the shoulder injury. (*Id.* at Page ID 885). Again, even taking these allegations as true, Hood has failed to show that his shoulder injury amounted to a serious medical need. In providing nothing but his assertion that Nurse Plumley overlooked the injury, he does nothing more than disagree with the diagnosis of a medical provider without showing any resulting injury. The same is true for Hood's claim that Nurse Plumley said his reported inability to breathe was due to allergies and she did not provide further treatment, as well as his complaint that Nurse Plumley treated what Hood believed to be a broken finger with instructions to put ice on it. Hood's disagreement with Nurse Plumley's medical assessments do not rise to the level of deliberate indifference. *See, e.g., Farmer*, 511 U.S. at 860 (prisoner's "suggested 'should have known' standard is nothing but a negligence standard" and thus not deliberate indifference).

Further, to satisfy the subjective component, the medical care must be "so grossly incompetent, inadequate or excessive as to shock the conscious or to be intolerable to fundamental fairness." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005). There is no evidence in the record that Nurse Plumley even knew of the shoulder injury that Hood alleges, let alone met this high bar. Indeed, there is nothing in the record to show that Nurse Plumley was aware "of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that she ignored that risk. *Farmer*, 511 U.S. at 837.

Although Hood asserts in his deposition and affidavit that Nurse Plumley lied in her reporting of his medical needs, this allegation amounts to nothing more than a bare assertion. (*See*

R. 62-3 at Page ID 879; R. 65 at Page ID 916). At the summary judgment stage, when faced with a dispute of fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, "[i]n order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence [that] would [permit] a finding in [his] favor on more than speculation, conjecture, or fantasy." *Arendale*, 519 F.3d at 605 (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d at 533). Hood points to nothing supporting this bare assertion and provides only conclusory allegations.[4]

Finally, although Hood claims "the medical department has refused to treat [his] wrist injury, left toe and complaints of hemorrhoids," there are no facts in the record to indicate that Nurse Plumley was involved in these refusals, that these injuries amounted to a serious medical need, or that the refusal to treat these injuries was done with any sort of malice. (R. 1 at Page ID 42). In sum, because none of Hood's allegations against Nurse Plumley satisfy the necessary objective and subjective prongs of a claim for deliberate indifference, it will be recommended that summary judgment be granted to Nurse Plumley on Moore's deliberate indifference claim against her.

### 2.    Hood's Deliberate Indifference Claim against Lt. Moore

In his final claim, Hood claims that, after being placed in restraints by Lt. Moore, he "had no access to hygiene products, sheets or blankets of any kind, a change of clothing or towels for the next three days." (*Id.* at Page ID 40). Defendants have construed these allegations as part of the excessive force claim. However, because the Defendants have asked the Court to grant summary judgment for all of Hood's claims that his constitutional rights were violated, the

---

[4] This is also true of Hood's allegations that Defendants "falsified government documents and conspired to cover up these events." (R. 64 at Page ID 911).

allegations related to Hood's conditions of confinement following the September 11 incident will also be addressed as though they present a separate claim.

Here, Hood has put forth no evidence that Lt. Moore was personally involved in depriving him of access to "hygiene products, sheets or blankets of any kind, a change of clothing or towels for the next three days" (*Id.* at Page ID 40) or that Lt. Moore was personally involved in Hood being subjected to these conditions. Although Hood testified that he was left in a cold cell "with nothing but a mattress for three days," he has put forward no evidence that Lt. Moore was personally involved in Hood being subjected to these conditions, accepting them as true. (R. 65 at Page ID 915). In a *Bivens* claim, a plaintiff "must offer evidence to support an individual defendant's personal involvement in the deprivation of a constitutional right." *Burley v. Gagacki*, 729 F.3d 610, 618 (6th Cir. 2013) (citing *Mueller v. Gallina*, 137 F. App'x 847, 850 (6th Cir. 2005); *Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997)). Hood has failed to do so.

Even if Hood had successfully alleged that Lt. Moore was personally responsible for subjecting Hood to the conditions he claims, his complaint fails to rise to the level of a constitutional violation. To satisfy the objective prong of a deliberate indifference analysis, the prison conditions imposed must be "extreme." *Hudson*, 503 U.S. at 9. Hood acknowledges that in order to avoid sharing a cell with a new cellmate, he requested to be transferred back to these conditions several days later, evidencing that the conditions were not extreme. (R. 62-3 at Page ID 871). Hood's allegations of the conditions in his cell, such as "having only a mattress" (*Id.* at Page ID 871), even when construed in a light most favorable to Hood, do not meet this standard. *See, e.g., Barajas v. Waters*, 815 F. Supp. 222, 226 (E.D. Mich. 1993) (summary judgment granted because prison condition allegations of *"*overcrowding, poor sanitation, inadequate lighting and

ventilation, unappetizing food, and less than ideal medical treatment . . . do not raise to the level of cruel and unusual punishment").

In considering the subjective component, Hood alleges that Lt. Moore subjected him to these conditions because Hood threatened to file a grievance against Lt. Moore for denying him lunch. (R. 1 at Page ID 40). In order to satisfy the subjective prong Hood must show that Moore was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [that he drew] the inference." *Farmer*, 511 U.S. at 837. Hood has presented no evidence that Lt. Moore knew that these conditions posed a significant risk to Hood or that Lt. Moore disregarded an excessive risk to Hood's health and safety. There is nothing in the record to indicate Lt. Moore was deliberately indifferent. As such, Hood's deliberate indifference claim against Lt. Moore fails to satisfy the subjective component.

Because Hood's allegations do not amount to a sufficiently extreme deprivation to satisfy either prong of the deliberate indifference analysis, it will be recommended that summary judgment be granted to Lt. Moore on Hood's deliberate indifference claim against him.

## IV.    QUALIFIED IMMUNITY

All Defendants have raised qualified immunity as an affirmative defense. (R. 62-1 at Page ID 825). Under Supreme Court precedent, "officers are entitled to qualified immunity . . . unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (internal quotation marks omitted); *see also Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc) (applying three-part test to determine whether defendants are entitled to qualified immunity).[5]

---

[5] In *Williams*, the Sixth Circuit stated: "The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether

Procedurally in this case, the Defendants first argued that they are entitled to qualified immunity in their prior Motion to Dismiss or, in the alternative, Motion for Summary Judgment. (*See* R. 19-1). In that filing, the Defendants submitted that: "Plaintiff ha[d] not presented any evidence and/or material facts to demonstrate that the Defendants' conduct violated a constitutional right; that Defendants would have been aware that any clearly established right was being deliberately violated; nor that the Defendants' conduct was objectively unreasonable." (*See id.* at Page ID 416).

Upon review, District Judge Van Tatenhove denied Defendants' Motion, stating that the Court was "unwilling to grant summary judgment on the Defendants' claims at this stage of the litigation, when no discovery at all has occurred." (*See* R. 31 at Page ID 680). However, District Judge Van Tatenhove noted that the Court reached its conclusion "even though the defendants ha[d] invoked qualified immunity," explaining that the Court's approach was consistent with Sixth Circuit case law directing that discovery is proper to assist the Court in determining whether qualified immunity applies. (*See id.* at n.2).

In their present motion, the Defendants again assert that they are entitled to qualified immunity. (*See* R. 62-1 at Page ID 825). Here, they submit that "[d]iscovery has closed and there are no genuine issues of material fact" regarding the propriety of qualified immunity. (*See id.* at Page ID 826). In his Response, Hood argues that "the Defendants are not entitled to qualified immunity because their conduct was flagrant, eg[]regious, and criminal" and that "[t]hese Defendants violated [his] Eighth Amendment right knowingly and willingly." (*See* R. 64 at Page ID 910-11).

---

the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams*, 186 F.3d at 691.

However, as discussed above, Hood has not put forward evidence to show that a genuine dispute of material fact exists concerning whether any of the Defendants violated his constitutional rights. Indeed, he has not shown that the Defendants should not be granted summary judgment on either his excessive force or deliberate indifference claims. Thus, he fails to overcome the first prong of the qualified immunity analysis: that the Defendants violated his constitutional rights. *See Baker v. City of Hamilton*, 471 F.3d 601, 605 (6th Cir. 2006) (explaining that when the defense of qualified immunity is raised, "the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity"); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that courts may address the prongs of the qualified immunity analysis in either order).

Finally, regarding the clearly established prong, "[f]or a right to be clearly established, the right's contours [need to be] sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *See Cordell*, 759 F.3d at 587 (internal quotation marks omitted). In this case, the evidence before the Court does not demonstrate that the Defendants should have known their actions violated Hood's constitutional rights. Instead, the record demonstrates that these officers acted in a constitutionally permissible manner. *See generally Whitley*, 475 U.S. at 321-22 (explaining deference afforded to prison officials to use force when necessary); *see also Estelle*, 429 U.S. at 106 ("In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.").

Accordingly, because Hood has not shown that the Defendants violated his clearly established Eighth Amendment rights, the Defendants are entitled to qualified immunity. *See Johnson v. Slone*, No. 7:16-274-KKC, 2018 WL 1402376, at *5 (E.D. Ky. Mar. 20, 2018) ("The

Court has concluded above that no Eighth Amendment violations occurred. Thus, Defendants are entitled to qualified immunity.").

## V.     CONCLUSION AND RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that:

1)      Defendants' Motion for Judgment on the Pleadings, or in the alternative, Motion for Summary Judgment (R. 62) be **GRANTED**; and

2)      the matter be **DISMISSED** and **STRICKEN** from this Court's active docket.

Particularized objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service or further appeal is waived. Fed. R. Civ. P. 72(b)(2); *Thomas v. Arn*, 474 U.S. 140, 155 (1985). A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991)). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right to appeal. *Howard*, 932 F.2d at 509. A party may respond to another's objections within fourteen (14) days of being served with a copy thereof. Fed. R. Civ. P. 72(b)(2).

Dated this 20th day of August, 2021.



Signed By:

*Candace J. Smith*

**United States Magistrate Judge**

J:\Case Notes\Pro Se Cases\18-124-GFVT Hood v. Moore\Hood R&R FINAL.docx