UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| COREY DE'ANDRE HOOD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 7:18-cv-00124-GFVT-CJS |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| LT. MOORE, *et al.*, | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on a Report and Recommendation filed by Magistrate Judge Candice J. Smith. [R. 80.] In her recommended disposition, Judge Smith recommends that Defendants' Motion for Judgment on the Pleadings or, in the alternative, Motion for Summary Judgment [R. 62] be granted and this matter be dismissed and stricken from the Court's active docket. [R. 80.] For the reasons set forth below, Judge Smith's recommended disposition will be ADOPTED in its entirety, Plaintiff Corey De'Andre Hood's objections will be OVERRULED, and this matter will be dismissed.

**I**

The events giving rise to this action occurred while Mr. Hood was incarcerated at United States Penitentiary (USP) Big Sandy. [R. 1 at 1.] On December 14, 2018, Mr. Hood filed a Complaint, *pro se*, alleging numerous violations of his civil rights by the following eight USP Big Sandy employees: Acting Warden Garza, Lt. Moore, Correctional Officer (C.O.) Howard, C.O. Harshbarger, Lt. Compton, Nurse Plumley, Chief Psychologist Le Fever, and Case Manager Webb. *Id.* at 9. Mr. Hood sought compensatory and punitive damages, transfer to a low-security institution, and evaluation and treatment of certain medical and psychological

issues. *Id.* at 13. Mr. Hood also expressed a desire to see "those listed in this complaint…held accountable." *Id.*

After review, Mr. Hood's claims against Acting Warden Garza, Lt. Compton, Chief Psychologist Le Fever, and Case Manager Webb were dismissed by this Court for failing to state a claim on which relief could be granted. [R. 7.] Following the motion dismissing Mr. Hood's claims against Acting Warden Garza, Lt. Compton, Chief Psychologist Le Fever, and Case Manager Webb, Defendants moved to dismiss the complaint, or in the alternative, summary judgment. [R. 19.] Defendants' motion was denied without prejudice to allow the parties to engage in discovery. [R. 31.] Mr. Hood moved to amend the complaint to add two additional parties, and that motion was denied. [R. 40; R. 68.] After a period of discovery, the Defendants moved for judgment on the pleadings, or in the alternative, summary judgment. [R. 62.] Mr. Hood, since filing his Complaint, has been released from BOP custody. [R. 73.]

## II

Mr. Hood's claims, which all relate to incidents that occurred in September 2018, are as follows: (1) an excessive force claim against Lt. Moore for allegedly placing Mr. Hood in restraints for sixteen hours; (2) an excessive force claim against then-C.O. Howard and C.O. Harshbarger for allegedly physically assaulting Mr. Hood; (3) a deliberate indifference claim against Nurse Plumley for allegedly denying medical care to Mr. Hood; and (4) a deliberate indifference claim against Lt. Moore for allegedly subjecting Mr. Hood to inhumane conditions of confinement. [R. 1.] Although Mr. Hood does not specify which constitutional rights he believes were violated, Judge Smith determined in her recommended disposition that Mr. Hood's claims should be analyzed under the eighth Amendment because Mr. Hood specifically asserts excessive force and deliberate indifference claims. *Id.* at 9.

After the matter was fully briefed and ripe for review, Judge Smith carefully analyzed each of Mr. Hood's four claims and determined that each one was without merit and that Defendants were entitled to summary judgment.[1]  [R. 80.]  Judge Smith also found that Defendants were protected by qualified immunity.  *Id.* at 30.  Judge Smith recommended that (1) Defendants' motion for judgment on the pleadings, or in the alternative, motion for summary judgment be granted; and (2) the case be dismissed and stricken from the Court's active docket.  *Id.* at 31.

Judge Smith provided that the parties had fourteen days from the date of service in which to appeal, and Mr. Hood objected to Judge Smith's report and recommendation within the two-week timeframe.[2]  Mr. Hood's objections consist of four bullet points.  [R. 81.]  First, Mr. Hood states that he "respectfully disagree[s]" with Judge Smith's recommendation.  *Id.*  Second, Mr. Hood provides that he submitted sworn testimony, complied with all court orders, stated constitutional violations in his complaint, "and did as much as [he] possibly could…to litigate the case."  *Id.*  Third, Mr. Hood states that "[i]t would be a travesty of justice if these Defendants are allowed to succeed with no just cause."  *Id.*  Fourth, Mr. Hood reiterates his belief that Defendants' reports contained inconsistencies and that Defendants should have been "deposed or officially questioned by the judiciary or lawyer for the record."  *Id.* at 2.  Mr. Hood further encourages the Court to "take the time to review the record and see for yourself" if the

---

[1] The Federal Rules of Civil Procedure stipulate that if on a 12(c) motion, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment" so long as all parties are given a "reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).  Judge Smith determined that this motion was more appropriately handled as a motion for summary judgment than a motion for judgment on the pleadings because both sides rely on matters outside the pleadings and had the opportunity to participate in discovery.  *See Shelby Cty. Health Care Corp. v. Southern Council of Industrial Workers Health and Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000).  Given that both parties have submitted materials outside the pleadings and had ample opportunity to respond to the issues presented, the Court agrees with Judge Smith that addressing this motion as one for summary judgment is appropriate.

[2] Judge Smith's report and recommendation was filed on August 20, 2021 [R. 80], and Mr. Hood's objection was filed on August 30, 2021.  [R. 81.]

Defendants knew their actions violated the law. *Id.* Mr. Hood also states that Defendants' reports accused him "of using vulgar homosexual epithets and comments" that he hasn't used "since Jr. High." *Id.* Mr. Hood states that C.O. Howard "continued to antagonize" him while he was in the hand restraints, and Judge Smith overlooked the fact that after he sought attention from a higher ranking officer on September 11, 2018, "there was two hours of me and my cellmate sleeping in an empty cell—we had no towels to cover a window" and that he "submitted peacefully to restraints" but stayed restrained for sixteen hours. *Id.* at 3.

Mr. Hood's first three objections and a sizable portion of the fourth objection consist entirely of general and conclusory statements. Judge Smith specifically stated that "[p]articularlized objections…must be filed with the Clerk of Court within fourteen (14) days of the date of service or further appeal is waived." [R. 80.] The Court acknowledges its duty to review Mr. Hood's filings under a more lenient standard than the one applied to attorneys because Mr. Hood is proceeding *pro se*. *See Franklin v. Rose*, 765 F.2d 82, 84–85 (6th Cir. 1985). However, a general objection that fails to identify specific factual or legal issues from the recommendation is not permitted because it duplicates the Magistrate Judge's efforts and wastes judicial economy. *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Furthermore, "[t]he filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Fields v. Lapeer 71-A District Court Clerk*, 2 F. App'x 481, 483 (6th Cir. 2001) (citing *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)). Therefore, the only objection this Court will consider is Mr. Hood's fourth objection, which will be addressed below.

In her recommended disposition, after finding that "a material issue of fact remains as to whether the grievance process was rendered functionally unavailable to exclude [Mr.] Hood

4

from the exhaustion requirement," Judge Smith addressed each of Mr. Hood's four arguments. [R. 80 at 12–13.] Mr. Hood posits two excessive force claims and two deliberate indifference claims. The Court will address the excessive force claims first.

### A

The Eighth Amendment of the U.S. Constitution prohibits prison officials from using excessive force against incarcerated individuals. *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010) (citing *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). Eighth Amendment claims include both an objective and subjective component. *Taylor v. Davidson Cty. Sheriff's Dept.*, 832 F. App'x 956, 959 (6th Cir. 2020) (citing *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).

The subjective component, which "focuses on the state of mind of the prison officials," *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), requires the plaintiff to show that force was applied "maliciously and sadistically to cause harm" instead of applied "in a good-faith effort to maintain or restore discipline." *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Hudson*, 503 U.S. 1 at 7).

The objective component requires the plaintiff to show "that the amount of force used was 'sufficiently serious' to warrant protection under the Eighth Amendment." *Taylor*, 832 F. App'x at 960 (quoting *Cordell*, 759 F.3d at 580). The objective component "requires a 'contextual' investigation, one that is 'responsive to contemporary standards of decency.'" *Cordell*, 759 F.3d 573 at 580 (quoting *Hudson*, 503 U.S. at 8).

### a

Judge Smith carefully analyzed Mr. Hood's excessive force claim against Lt. Moore and found that it was without merit. [R. 80 at 14.] Under the objective prong, Judge Smith noted that a successful excessive force claim must show that the injury was "more than *de minimis* for

an Eighth Amendment claim to go forward." [R. 80 at 14 (citing *Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010)]. Here, the undisputed record demonstrates that Lt. Moore used soft restraints and Mr. Hood admits that he sustained no injuries from use of the restraints. *Id.* at 14. Furthermore, although Mr. Hood did complain of wrist pain during some checks, no injuries were noted by the multiple medical providers who conducted restraint reviews on Mr. Hood. *Id.* at 15. Judge Smith further found that the lack of injury from the restraints provided further support for the proposition that the use of force by Lt. Moore was done in good faith. *Id.*

Judge Smith next analyzed the subjective prong. Judge Smith noted that under the subjective prong, a prison official deserves "wide ranging deference in the adoption and executive of policies…needed to preserve internal order and discipline and to maintain institutional security." *Whitley*, 475 U.S. at 321–22. Further, a showing must be made "that there is no plausible basis for the officials' belief that this degree of force was necessary." *Id.* at 323. After thoroughly analyzing the record, Judge Smith found that Mr. Hood failed to satisfy the subjective prong.

First, prior to being placed in restraints, Mr. Hood admits that he was making noise and kicking on his cell door for ten to fifteen minutes. [R. 62-3 at 13.] Prison records also indicate that Mr. Hood and his cellmate "began threatening staff should they be approached." [R. 19-2 at 468.] Prison records further indicate that Mr. Hood continued to be aggressive after being placed in restraints and used profane language towards staff. *Id.* at 457–58 (when asked if he was ready to comply with staff directives after two hours in soft ambulatory restraints, Mr. Hood replied "No! Get me a BP-11 you bitc*a** motherfu**ers."); *Id.* (four hours after being placed in soft ambulatory restraints, Mr. Hood stated "you can go suck my di** until you bring me my BP-11"); *Id.* at 41 (seven and a half hours after being placed in soft ambulatory restraints, Mr. Hood

6

stated, "this is bullsh\*\*, when I get a chance I'm going to fu\*\* that other Lieutenant up."; *Id.* (nine and a half hours after being placed in soft ambulatory restraints, Mr. Hood stated, "if you ain't going to take these off, then get the fu\*\* out."); *Id.* (eleven and a half hours after being placed in ambulatory restraints, Mr. Hood stated "Barker, you're a piece of sh\*\* too! I hope you and that other lieutenant fu\*\*ing die."); *Id.* at 42 (approximately thirteen and a half hours after being placed in restraints, Mr. Hood still displayed aggravated behavior and remained in the restraints).

Furthermore, the record indicates that soft restraints were used instead of hard restraints, and Mr. Hood was periodically checked and was released from the restraints once he calmed down and his disruptive behavior ceased. *Id.* Furthermore, to the extent that Mr. Hood argues that he was placed in restraints for an excessive amount of time, Judge Smith found that his arguments fail as a matter of law because "physical restraints are constitutionally permissible where there is a penological justification for their use." [R. 80 at 15 (quoting *Kennedy v. Doyle*, 37 F. App'x 755, 757 (6th Cir. 2002) (internal citations omitted)). Given Mr. Hood's behavior, Judge Smith found that Lt. Moore had a plausible basis to reasonably believe that Mr. Hood behavior, if not controlled, might lead to injury to prisoners or to staff. [R. 80 at 15.]

This Court agrees with Judge Smith's analysis on both the objective and subjective components of an excessive force claim. The evidence fails to support "a reliable inference of wantonness in the infliction of pain," which is required for an Eight Amendment claim pertaining to a prison official's use of force in the deploying prison security measures. *Whitley*, 475, U.S. at 322. Furthermore, courts across the Sixth Circuit have held that a lack of evidence of medical injury suggests that reasonable force was applied in good faith. *See, e.g.*, *White v. Erdos*, 2020 WL 7237280, at \*4 (S.D. Ohio Dec. 9, 2020) ("In considering plaintiff's disruptive

7

course of conduct, taken together with the lack of any injury to plaintiff, defendant's conduct was reasonably 'applied in a good faith effort to maintain or restore [discipline],' and not to 'maliciously or sadistically cause harm.'") (quoting *Whitley*, 475 U.S. at 319); *McGranahan v. KDOC*, 2020 WL 4572358, at *6 (W.D. Ky. Aug. 7, 2020) ("Although the nature of the injury suffered is not dispositive, '[g]iven the de minimis injuries, it cannot reasonably be concluded that [Defendants'] response showed lack of good faith or a malicious and sadistic intent to cause harm to [McGranahan].'") (quoting *Harbin v. Eaves*, 2015 WL 3687468, at *5 (W.D. Ky. June 12, 2015)); *Clarke v. Umbarger*, 2009 WL 2983112, at *4 (E.D. Mich. Sept. 15, 2009) ("The lack of evidence that he suffered any permanent or severe injuries as a result of being restrained suggests that reasonable force was applied in a good faith effort to restore institutional control, and not for the purpose of causing him harm. Plaintiff does not dispute precipitating the altercation."); *Cage v. Tuttle*, 2009 WL 2252071, at *5 (E.D. Mich. July 28, 2009) ("The lack of evidence that he suffered any permanent or severe injuries as a result of being restrained suggests that reasonable force was applied in a good faith effort to restore institutional control, and not for the purpose of causing him harm.").

      Mr. Hood argues in his fourth objection that he was accused of making certain "vulgar epithets" which he did not make, that Judge Smith overlooked the fact that he and his cellmate were sleeping in an empty cell without a towel to cover a window for two hours, and that he submitted peacefully to the restraints yet stayed restrained for sixteen hours.  [R. 81 at 2–3.] Although there may have been particular words attributed to Mr. Hood that he does not recall saying, the record is clear that Mr. Hood was verbally abusive and antagonistic both before and while restrained, and that he only submitted peacefully to restraints after being ordered to do so. [R. 19-2 at 5, 40–42.]  Furthermore, the evidence does not demonstrate that Mr. Hood's time

8

spent sleeping in an empty cell or time spent in soft restraints were unreasonable given the facts or applied "maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320–21. Accordingly, Mr. Hood's first claim fails.

### b

Mr. Hood next brings an excessive force claim against C.O. Howard and C.O. Harshbarger, claiming that they assaulted him on September 20, 2018. [R. 1 at 4.] Mr. Hood states that as he stood in front of his cell, C.O. Howard "pushed and tackled me to the back of the cell causing me to strike my head on the base of the shower." *Id*. Mr. Hood also states that after he started screaming "police brutality," C.O. Harshbarger entered his cell and put his knee into Mr. Hood's upper spine. *Id*. Mr. Hood says C.O. Harsharger did not stop until other officers arrived, and he was placed in painful restraints for the next ten hours. *Id*.

Judge Smith analyzed Mr. Hood's claim against C.O. Howard and C.O. Harshbarger and also found that it was without merit. Judge Smith first analyzed the objective component, finding that to satisfy the objective component, Mr. Hood must show that the pain he experienced was "sufficiently serious." [R. 80 at 18 (quoting *Williams*, 631 F.3d at 383).] Although Mr. Hood claims the restrains caused him "excruciating" pain, the record shows that he received continued restraint checks and no injuries were noted. [R. 19-2 at 482–488.] Mr. Hood also stated that the pain from the handcuffs lasted for less than one day and the swelling lasted for two days. [R. 64 at 908–09.] Furthermore, while Mr. Hood says the altercation exacerbated a prior shoulder injury, he states that this injury went away after self-prescribed rehabilitation exercises. [R. 62-3 at 30.] Ultimately, Judge Smith found that the facts, making all justifiable inference in Mr. Hood's favor, failed to demonstrate injury sufficiently "serious to offend contemporary standards of decency.' [R. 80 at 18 (quoting *Cordell*, 759 F.3d at 585).]

9

Judge Smith next analyzed the subjective prong and found that Mr. Hood's allegations failed to show that C.O. Howard and C.O. Harshbarger had the culpable state of mind required for an Eighth Amendment excessive force claim. [R. 80 at 18.] First, Mr. Hood admits that when he was told to move to the back of his cell, he refused to comply. *Id.* (citing [R. 62-3 at 22]). C.O. Howard described the incident with Mr. Hood as Mr. Hood "attempt[ing] to exit the cell in an aggressive manner almost striking me with his shoulder" after C.O. Howard opened the cell door to escort another inmate into Mr. Hood's cell. *Id.* (citing [R. 19-2 at 60]). Given Mr. Hood's noncompliance and aggressiveness, Judge Smith found that it was permissible for C.O. Howard to use a reasonable amount of force against him. [R. 80 at 18.]

As to the issue of whether use of force was justified in this case, Judge Smith found that C.O. Howard could have reasonably believed that some force was necessary to move Mr. Hood to the back of the cell following Mr. Hood's refusals to do so. *Id.* at 18–19 (citing *Whitley*, 475 U.S. at 321). Furthermore, Judge Smith found that the evidence did not support a reliable inference of wantonness. *Id.* at 19. Specifically, given Mr. Hood's aggressive behavior and lack of compliance, there was a reasonable inference that some application of force "was necessary to regain control of the situation and further restrain [Mr.] Hood." *Id.* at 19. Judge Smith also distinguished the facts of this case from cases in which courts have found summary judgment not appropriate. *Id.* at 20. Although Mr. Hood claims he was lying on his stomach "non-resistant and screaming police brutality," Judge Smith found, after reviewing the record, that "multiple prison officials were necessary to gain control of [Mr.] Hood," and "he remained aggressive even though he was in hand restraints." *Id.* (citing [R. 19-2]). Furthermore, the record indicates, and by Mr. Hood's own admission, C.O. Howard tried to catch Mr. Hood as he fell. *Id.* Furthermore, Mr. Hood stated that the length of time C.O. Harshbarger restrained him was about

10

thirty seconds to one minute. *Id.* at 21. Judge Smith wrote that although a lack of injury is not dispositive in excessive force cases, it does go to whether the force applied or used was necessary and appropriate. *Id.* Here, Judge Smith found that the surrounding circumstances, coupled with the short duration of the use of force in the face of Mr. Hood's aggressive behavior, indicates that the amount of force used was necessary and appropriate. *Id.* (citing *Wilkins*, 559 U.S. at 37).

In his objection, Mr. Hood contends that C.O. Howard continued to antagonize him while he was restrained. [R. 81 at 2.] However, the record is not clear as to how precisely C.O. Howard antagonized Mr. Hood, other than Mr. Hood's assertion that C.O. Howard and others "laughed at my complaints of pain and refused to release me from the restraints." [R. 65 at 3.] "[V]erbal abuse or harassment by jail or prison staff does not violate the constitution." *Royalty v. Chandler*, 2020 WL 6470171, at *3 (E.D. Ky. Nov. 3, 2020) (citing *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012)). The Eighth Amendment is meant to guard against malicious and sadistic uses of force to cause harm. *Hudson*, 503 U.S. at 9. While certainly not welcome, "harassment and verbal abuse … do not constitute the type of infliction of pain that the Eighth Amendment prohibits." *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004). After reviewing the record and Judge Smith's recommended disposition, the Court finds it appropriate to grant summary judgment in favor of C.O. Howard and C.O. Harshbarger.

**B**

Mr. Hood also brings two deliberate indifference claims, one against Nurse Plumley and one against Lt. Moore. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth

11

Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Prison officials must ensure that prisoners receive "adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). However, "not every harm or injury suffered in prison rises to the level of cruel and unusual punishment; 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Rhodes v. Michigan*, --- F. 4th ----, 2021 WL 3730698, at *4 (6th Cir. Aug. 24, 2021). Like excessive force claims, deliberate indifference claims include both an objective and subjective component. *Griffith v. Franklin Cty.*, 975 F.3d 554, 567 (6th Cir. 2020).

First, under the objective prong, "the deprivation alleged must be, objectively, 'sufficiently serious.'" *Rhodes*, 2021 WL 3730698, at *5 (quoting *Farmer*, 511 U.S. at 834). In the medical care context, "[t]he objective component requires a plaintiff to prove that the alleged deprivation of medical care was serious enough to violate the [Constitution]." *Griffith*, 975 F.3d at 567 (quoting *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018)). "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004)). However, if a plaintiff received medical care and is seeking redress based on the alleged inadequacy of care, "there must be 'medical proof that the provided treatment was not an adequate medical treatment of [the inmate's] condition or pain.'" *Griffith*, 975 F.3d at 567 (quoting *Rhinehart*, 894 F.3d at 737). "'Extreme deprivations,' rather than 'routine discomfort,' are required to satisfy the objective component of a deliberate indifference claim. *Hudson*, 503 U.S. at 8–9. Furthermore, conditions that are "restrictive and even harsh" are not

12

on their own cruel and unusual, but are rather a "part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

Second, under the subjective prong, "the official must have acted with 'deliberate indifference' to inmate health or safety." *Rhodes*, 2021 WL 3730698, at *5 (quoting *Farmer*, 511 U.S. at 834). A prisoner must demonstrate that the prison official acted with the sufficiently culpable state of mind. *Hudson*, 503 U.S. at 9. To be found liable, a prison official must know of and disregard "an excessive risk to inmate health or safety." *Rhodes*, 2021 WL 3730698, at *5. "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Farmer*, 511 U.S. at 837).

a

Mr. Hood's first deliberate indifference claim is against Nurse Plumley, in which he argues that Nurse Plumley was deliberately indifferent to his serious medical needs. [R. 1 at 5–6.] Specifically, Mr. Hood alleges that Nurse Plumley "refused to acknowledge [his] complaints of pain during her medical assessment," was not truthful throughout her report, and ignored numerous physical injuries. *Id.*

Judge Smith carefully analyzed Mr. Hood's claims against Nurse Plumley and found they were without merit. [R. 80 at 23.] First, Judge Smith looked to claims against Nurse Plumley arising out of the September 11, 2018, incident, and noted that no injuries were reported at that time. *Id.* Furthermore, Mr. Hood testified that he did not suffer pain from his time in restraints arising from the events on September 11. *Id.* (citing [R. 62-3 at 20]). Therefore, because there were no injuries, Judge Smith found that no reasonable jury could find that Mr. Hood had a medical need that was "so obvious that even a lay person would easily recognize the necessity

13

for a doctor's attention." *Id.* (quoting *Harrison*, 539 F.3d at 518).

Judge Smith next addressed Mr. Hood's deliberate indifference claims against Nurse Plumley following the September 20, 2018, incident. *Id.* Mr. Hood claims that Nurse Plumley ignored his complaints regarding the tightness of the handcuffs and completed a "bogus" medical assessment which stated the restraints were properly applied. *Id.* (citing [R. 62-3 at 24, 26]). Mr. Hood argues that Nurse Plumley knew the handcuffs were too tight because they made his hands "swell like balloons." *Id.* at 24 (citing [R. 62-3 at 26]). However, Judge Smith found that the record, including Mr. Hood's own statements regarding the pain and swelling he experienced, does not support Mr. Hood's allegations. *Id.* at 24. Furthermore, Judge Smith found that the record does not demonstrate that Nurse Plumley was deliberately indifferent to Mr. Hood's medical needs. *Id.* Mr. Hood received continued checks and medical care throughout his time in restraints following both the September 11 incident and September 20 incident. *Id.*

Judge Smith also analyzed Mr. Hood's arguments relating to his shoulder, ability to breathe, and treatment of his finger and found that "[Mr.] Hood's disagreement with Nurse Plumley's medical assessments do not rise to the level of deliberate indifference." *Id.* at 25 (citing *Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005)). Judge Smith also found that Mr. Hood's assertions that Nurse Plumley lied in her medical reports "amounts to nothing more than a bare assertion." *Id.* Finally, as to Mr. Hood's claim that "the medical department has refused to treat [his] wrist injury, left toe and complaints of hemorrhoids," Judge Smith found "no facts in the record indicate that Nurse Plumley was involved in these refusals, that these injuries amounted to a serious medical need, or that the refusal to treat these injuries was done with any sort of malice." *Id.* at 26.

14

After reviewing the record, the Court agrees with Judge Smith's analysis as to the claim against Nurse Plumley. The record simply does not indicate "extreme deprivations" as opposed to "routine discomfort," *Hudson*, 503 U.S. at 8–9, or that Nurse Plumley acted with a culpable state of mind. *Rhodes*, 2021 WL 3730698, at *5. Furthermore, Mr. Hood did not object to Judge Smith's recommendation regarding Nurse Plumley, and summary judgment will be granted to Nurse Plumley on Mr. Hood's deliberate indifference claim.

b

Mr. Hood's final argument is a deliberate indifference claim against Lt. Moore. [R. 1 at 4.] Specifically, Mr. Hood claims that after Lt. Moore placed him in restraints, and he "had no access to hygiene products, sheets or blankets of any kind, a change of clothing or towels for the next three days." *Id.* Because these allegations relate to Mr. Hood's conditions of confinement following the September 11 incident, Judge Smith analyzed the allegations as a separate claim. [R. 80 at 27.]

Judge Smith first found that there was no evidence that Lt. Moore was personally involved in Mr. Hood's subjection to his alleged conditions, accepting them as true. *Id.* Judge Smith also found that Mr. Hood's allegations failed to rise to the level of deliberate indifference, as they failed both the objective and subjective prongs of the analysis. *Id.* First, Mr. Hood failed to demonstrate that the prison conditions imposed upon him were "extreme," particularly because he requested transfer back to these same conditions several days later to avoid sharing a cell with a new cellmate. *Id.* Second, Judge Smith determined that Mr. Hood had presented no evidence that "Lt. Moore knew that these conditions posed a significant risk to [Mr.] Hood or that Lt. Moore disregarded an excessive risk to [Mr.] Hood's health and safety." *Id.* at 28. A plaintiff must "offer evidence to support an individual defendant's personal involvement in the

15

deprivation of a constitutional right," and Judge Smith found that Mr. Hood failed to offer such evidence. *Id.* (citing *Burley v. Gagacki*, 729 F.3d 610, 618 (6th Cir. 2013)).

After reviewing the record, the Court agrees with Judge Smith's recommended disposition as to the claim against Lt. Moore. "Only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," and Mr. Hood has failed to meet that threshold here. *Rhodes*, 2021 WL 3730698, at *4. Furthermore, Mr. Hood failed to demonstrate that Lt. Moore acted with the sufficiently culpable state of mind, *Hudson*, 503 U.S. at 9, or was even involved in subjecting Mr. Hood to his alleged conditions, accepting Mr. Hood's allegations as true. Furthermore, Mr. Hood did not object to Judge Smith's recommendation rergarding his deliberate indifference claim against Lt. Moore. Accordingly, the Court will grant summary judgment to Lt. Moore on Mr. Hood's deliberate indifference claim.

### C

Judge Smith also found that Defendants were protected by qualified immunity. *Id.* at 30. The Supreme Court has held that "officers are entitled to qualified immunity…unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). Defendants argued in their prior Motion to Dismiss, or in the alternative, Motion for Summary Judgment that they were entitled to qualified immunity. [R. 19.] This Court denied Defendants' motion and directed the parties to engage in discovery so that a proper determination of qualified immunity could be made. [R. 31.] After engaging in discovery, Defendants once again argue that they are entitled to qualified immunity. [R. 62-1 at 22.]

Mr. Hood argues that Defendants are not entitled to qualified immunity because "their conduct was flagrant, egregious, and criminal." [R. 64 at 7.] Judge Smith analyzed both prongs

16

of the qualified immunity analysis and determined that Mr. Hood failed to meet both prongs.  [R. 80 at 30.]  The Court agrees with Judge Smith that Mr. Hood has failed to show that Defendants violated his clearly established Eighth Amendment rights.  Furthermore, Mr. Hood did not object to Judge Smith's recommendation regarding qualified immunity, and the Court finds that Defendants are entitled to qualified immunity.

## III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Mr. Hood's Objections **[R. 81]** are **OVERRULED**;

2. Judge Smith's Report and Recommendation **[R. 80]** is **ADOPTED** as and for the opinion of the Court;

3. Defendants' Motion for Summary Judgment **[R. 62]** is **GRANTED**;

4. This matter is **DISMISSED** and **STRICKEN** from the Court's active docket; and

5. Judgment in favor of Defendants will be entered contemporaneously with this Order.

This the 3d day of September, 2021.

Gregory F. Van Tatenhove
United States District Judge